STATE OF VERMONT

ENVIRONMENTAL COURT

<table>
<tr><td>In re: Appeal of Ira and Martha Jackson</td><td>}<br>}<br>}   Docket No. 186-9-00 Vtec<br>}<br>}</td></tr>
</table>

<table>
<tr><td>Town of Waitsfield, Plaintiff,<br><br>v<br><br>Ira and Martha Jackson,<br>Defendants.</td><td>}<br>}<br>}   Docket No. 125-8-01 Vtec<br>}<br>}<br>}</td></tr>
</table>

Decision and Order on Motions for Summary Judgment

In Docket No. 186-9-00 Vtec Appellants Ira and Martha Jackson appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Waitsfield upholding the Zoning Administrator's Notice of Violation and decision disapproving Appellants' as-built application, dismissing Appellants' application under § V(9) of the Zoning Ordinance, and denying Appellants' applications under §§ IV(4) and IV(5) of the Zoning Ordinance. In Docket No. 125-8-01 Vtec, the Town brought an enforcement action against Appellants. The two matters have been consolidated. Appellants are represented by Carl H. Lisman, Esq., Christina A. Jensen, Esq. and Peter S. Sidel; the Town is represented by Steven F. Stitzel, Esq. and Amanda S.E. Lafferty, Esq. The parties have filed cross-motions for summary judgment; the hearing on the merits of this matter was postponed to October 30 and 31, 2001, to allow for the briefing of these motions.

The following facts are undisputed unless otherwise noted.

Appellants own property, including a single-family residence and what was an existing 18' x 30' shed or barn[1], at 914 Main Street in the Agricultural/Residential zoning district of the Town of Waitsfield. In the past,, a watercourse[2] traversed the property at a distance of from 12 to 26 feet from the existing barn, to serve an operating water-powered mill. At that time, a pond on the property was fed from Shepard's Brook; the pond impounded water to power the mill, from which the water returned to Shepard's Brook through the watercourse. The mill no longer exists. Material facts are in dispute as to the current status of the pond; the current source of water to the pond; the current connection, if any, from the pond to the watercourse; the current condition of the watercourse; how frequently and how far water flows in it; and whether it makes any

connection back to Shepard's Brook. Material facts are also in dispute as to the definitions of " stream" used in the fields of hydrology, geography, or stream protection.

On August 31, 1998, Appellants applied to the Town to disassemble, reconstruct and enlarge the barn. The application proposed to disassemble the existing barn, to salvage and reuse its material as much as possible, and to construct a 30' x 30' barn, using the same rear and side wall locations. The permit application refers to the proposed structure as a " barn/garage" and to the use of the property as " residential." The maximum height of the proposed structure is described as " 24'." The application included a sketch plan showing the existing structure's placement in relation to the watercourse, designated as " flume location" on the sketch plan, with distances of 12' and 26' shown from the rear corners of the existing barn, and a distance of 44' shown from the front side corner of the existing barn. The application included a front elevation and a side elevation of the proposed structure, showing its height as 24', its footprint as 30' x 30', a roof overhang of 1' on each side, and a 5' x 6' central shuttered opening in the gable end, with an apparent but unlabeled attic floor line at 9 feet above the finished floor elevation. The application was referred by the Zoning Administrator for a " variance for construction within setback of 50 ft. from a stream."

The stream setback ' variance' application, filed the same day, contains a rougher sketch plan showing the 12' to 26' existing rear setbacks to what is labeled " stream." The cover letter for both applications states: " The existing structure does not conform to current set back requirements from a stream."

The ZBA considered the stream setback application at a hearing held on October 20, 1998, after three members of the ZBA had made a site visit. The hearing included a brief discussion distinguishing between the § V(9) stream setback provisions[3] and the ordinary variance provisions of the Zoning Ordinance. The hearing was recessed to November 3, 1998, and Appellants were requested to submit an erosion control plan. On October 26, 1998 Appellants submitted a letter and diagram describing the following precautions to be taken: bales of hay along the bank, silt fencing where needed along the bank, and landscape fabric where needed. The diagram was a copy of the original sketch plan showing " flume location" with a line of hay bales added.

Section V(9)(A) of the Zoning Ordinance allows the ZBA to reduce the setback from rivers and streams upon a finding that a lesser setback will not adversely affect water quality or scenic beauty. By notice of decision dated November 25, 1998, the ZBA approved Appellants' application for the stream setback variance " as indicated on the applicant's plans (September 29, 1998)," with certain conditions. This decision was specifically issued under the authority of § V(9) of the Zoning Ordinance and not under § IV(4) governing ordinary variances. This decision was not appealed and became final. Based on the issuance of the stream setback decision, the Zoning Administrator then granted the zoning permit for the 30' x 30' barn on November 28, 1998. The zoning permit was not appealed and became final.

After obtaining these approvals and before construction, Appellants decided to alter the design originally proposed. Appellant's brother, a Connecticut architect, discussed the proposed modifications by telephone with the Zoning Administrator. The parties dispute the content of that

discussion, and specifically whether the Zoning Administrator orally advised the architect that the modified building would be approved upon submission of as-built plans and payment of an additional fee following construction.

Appellants then constructed[4] a structure in the 30' x 30' footprint, but with two full stories and a balcony, changing the height to approximately 34 feet 6 inches. Appellants added a bathroom with plumbing but no floor drain, plumbed into the existing septic system. The construction used all new materials.

In October of 1999, Appellants applied to the Zoning Administrator for a zoning permit for the as-built structure[5]. The Zoning Administrator denied that application on November 4, 1999, stating that " [n]o amended ' variance' approval has been granted by the Zoning Board of Adjustment for the extension and expansion of the barn therefore, no extension may be allowed." With the denial, the Zoning Administrator also issued a notice of violation regarding the construction and the asserted change of use of the structure. On November 12, 1999, Appellants appealed to the ZBA the Zoning Administrator' s denial of the as-built application and the notice of violation, and also applied to the ZBA[6] for a stream setback variance under § V(9). By letter dated February 22, 2000[7], the ZBA informed Appellants that they instead should submit an application for a variance under the ordinary variance provisions of § IV(4) and also should submit an application to the ZBA for approval of the structure as a conditional use under § IV(5).

On April 24, 2000, Appellants applied " under protest" for a § IV(4) variance and for § IV(5) conditional use approval.[8] By decision dated August 1, 2000, the ZBA denied these applications, affirmed the notice of violation and the Zoning Administrator' s decision to deny Appellant' s October 1999 zoning permit application, and dismissed Appellants' November 1999 application for § V(9) stream setback approval. All issues in the ZBA' s August 1, 2000 decision are on appeal in the present case.

The Town' s complaint, filed in August 2001 in Docket No. 125-8-01 Vtec, requests injunctive relief requiring Appellants to remove the second story and the balcony of the structure, and to remove the " portion of the structure that intrudes into the setback of the stream further" than permitted by the November 1998 ZBA approval, and to " use the structure only in accordance with Town approvals and permits."

Appellants have moved for summary judgment that the watercourse is not a " stream" under the Zoning Ordinance and therefore that the stream setback does not apply to the structure, and that Appellants needed no further permits or variances after obtaining the reduced stream setback ruling in November of 1998. The Town has moved for summary judgment that Appellants are precluded from contesting the existence of a stream on their property, that Appellants are precluded from contesting that the barn is a non-complying structure, and that Appellants must apply for and obtain all three of the following approvals: a variance in accordance with § V(11)(B) and § IV(4); conditional use approval in accordance with § V(11)(A) and § IV(5); and a reduced stream setback under § V(9).

Appellants first argue that the Town may only " regulate" streams found on the Official Zoning Map under § II(2). They argue that as the watercourse at issue in this appeal does not appear on that map, the Town may not regulate their structure' s setback from it.

Section II(2) only addresses the locations and boundaries of the various zoning districts established by the Zoning Ordinance, as follows:

The location and boundaries of Zoning Districts are established as shown on the Official Zoning Map. . . . Regardless of the existence of copies of the Official Zoning Map, which may from time to time be made or published, the Official Zoning Map, which shall be located in the office of the Clerk of the municipality, shall be the final authority as to the current zoning status of land and water areas.

The Official Zoning Map thus is conclusive as to which district applies to a particular land or water area. It does not otherwise exempt from regulation any land, water or structural features not located on the Official Zoning Map. Accordingly, Appellants' Motion for Summary Judgment is DENIED on this issue and Summary Judgment is GRANTED in favor of the Town on this issue: the watercourse need not appear on the Official Zoning Map to be subject to the Zoning Ordinance.

Appellants also argue that the watercourse is not a " stream" but is instead a " ditch" not subject to the § V(9) stream setback requirements. The Town argues that Appellants are precluded from making this challenge by the finality of their 1998 application for and approval of a reduced stream setback, and the associated zoning permit. However, the question of whether the watercourse was in fact a stream was never decided in the 1998 proceedings. Appellants remain bound by the terms of their 1998 approvals, but may still challenge whether those approvals were necessary, and therefore whether any subsequent amendments to those approvals are required. Accordingly, the Town' s Motion for Summary Judgment is DENIED on this issue; Appellants are not precluded from challenging the Town' s jurisdiction to apply § V(9) to the watercourse at issue in this appeal. However, Appellant' s Motion for Summary Judgment on whether the watercourse is a " stream" is also DENIED, as material facts are in dispute.

Appellants also argue that once they obtained the § V(9) reduction in the required stream setback, the barn was no longer a noncomplying structure. They argue that they were then free to alter that structure so long as they did so within other applicable zoning requirements, and that they did not need an additional variance or conditional use approval for the as-built structure. The Town argues that the § V(9) reduction in the required stream setback is a provision in addition to the other requirements imposed on pre-existing non-complying structures. That is, the Town argues that even if such a reduction is obtained, it does not relieve a pre-existing non-complying structure from also having to obtain a variance under § V(11)(B) and § IV(4) and conditional use approval under § V(11)(A) and § IV(5). The Town argues that the variance criteria imposed by 24 V.S.A. § 4468 apply to the § V(9) reduction in the required stream setback, as well as to the ordinary variance provisions of § IV(4).

The Town fails to distinguish between the zoning technique well-understood as a " variance" and the less well-known type of zoning technique called a " special exception." Section V(9)(A) of

the Waitsfield Zoning Ordinance is designed as a valid " special exception" from the stream setback requirement, distinct from the ordinary variance provided in § IV(4).

" Variances" and " special exceptions" are distinct zoning concepts. A variance is given to a project which fails to comply with some aspect of the zoning ordinance, but which must nevertheless be allowed so that the landowner can make a reasonable use of his property. That is, the landowner would suffer a hardship as described in 24 V.S.A. § 4468 or § IV(4) if the variance were not granted. A pre-existing structure which is granted a variance to expand ordinarily remains a non-complying structure or non-conforming use, merely one which is authorized to expand under the terms of the variance.

On the other hand, a special exception may be thought of as an alternative set of standards for approval, written into the zoning ordinance. If a project fails to meet the standards for approval which ordinarily would be applicable to the project, but meets the threshold for qualifying for the special exception, then it may be approved under those alternative standards, and does not need to apply for a variance. Once the proposal has obtained the special exception, it complies with the ordinance, because it conforms to the alternative standards written into the ordinance. Once a pre-existing structure or new proposal is granted a reduction in an otherwise-required setback, it thereafter is a complying structure as to the setback, because the setback requirement has been reduced and the structure now complies with it. Thereafter, the provisions for abandonment or expansion of non-complying structures do not apply, because the structure is now a complying one. See In re Appeal of Gilberg, et al., Docket No. 179-10-99 Vtec (Vt. Envtl. Ct., October 4, 2001) (slip op. at 1-2); and see, also, K. Young, Anderson' s American Law of Zoning § 20.03: " Special Permit and Exception Distinguished [from Variance]" (4th ed. 1996).[9]

The Town also argues that Vermont' s zoning enabling statute does not allow a Town to adopt a provision such as § V(9) providing a special exception. However, although the zoning enabling act does provide specific authorization for conditional uses and variances, 24 V.S.A. § 4407 provides is very general terms that " [a]ny municipality may adopt zoning regulations that may include, but shall not be limited to, any of the following provisions: . . . ." (Emphasis added). There is no prohibition against special exceptions in the zoning enabling act. The very authority allowing a municipality to establish a setback at all, or to establish one setback for residential uses and another setback for commercial uses, allows the municipality to write into its ordinance provisions for appropriately reducing or enlarging those setbacks. Zoning ordinances often incorporate such special exceptions, although hardly any use that label for the provisions. For example, ordinances may provide for a specified front setback, but allow a reduced setback if the existing houses on either side of the proposed lot have a smaller setback. Other ordinances may allow expansion of a nonconforming use up to a certain percentage, upon approval by the ZBA.

To be upheld, such special exceptions must, of course, provide a standard for the ZBA to apply. In the present case, the ordinance' s requirement that the reduced setback " be accomplished in a manner which will not adversely affect water quality or scenic beauty" is an adequate standard for the ZBA to apply.

If Appellants had constructed the barn as represented in their 1998 applications and as approved by the ZBA in 1998, it would have been a complying structure, that is, complying with the

reduced stream setback. Instead, Appellants altered the project without obtaining prior approval of the changed design. Although they did not have to apply for an ordinary variance or conditional use approval, they should have applied for an amendment to their zoning permit. Because the stream setback reduction was granted " as shown on" their 1998 plans, the changed plan also required an amendment to the stream setback approval. That is, the amendment would have had to show that the larger building in the same footprint also would " not adversely affect water quality or scenic beauty." Both of those approvals should have been obtained[10] before construction, and must be obtained as-built.

Accordingly, Appellants' Motion for Summary Judgment is GRANTED and the Town' s Motion for Summary Judgment is DENIED on the following issue. As of and after the ZBA' s November 1998 ruling reducing the stream setback required for the structure, under § V(9), the structure as proposed and approved in the 1998 permit was a complying structure as to stream setback. Therefore, § V(11) did not apply to it[11], and neither a variance in accordance with § V(11)(B) and § IV(4) nor conditional use approval in accordance with § V(11)(A) and § IV(5) was or is required for the structure.

However, under the 1998 approvals, Appellants only held a zoning permit for a 24-foot-high structure, on a 30' x 30' footprint, with a one-foot roof overhang, for use as a barn/garage, in connection with the residential use of the property. Any changes to that permit require an application for an amendment to the 1998 zoning permit and an amendment to the 1998 stream setback reduction, which was originally approved " as indicated on [Appellants' ] plans [dated] September 29, 1998." Accordingly, the Town' s Motion for Summary Judgment is GRANTED and Appellants' Motion for Summary Judgment is also GRANTED, that the as-built project requires approval of an amendment to the 1998 stream setback reduction order, as well as approval of an amendment to the 1998 zoning permit. The ZBA should have acted on the application under § V(9)(A) rather than dismissing it, and the Zoning Administrator should have waited for the ZBA' s § V(9)(A) ruling before acting on the zoning permit amendment application.

Although ordinarily a matter such as this would be remanded to the ZBA for action on the § V(9)(A) application, it appears to the Court that we should first proceed with the hearing on the merits of whether the watercourse is a stream, because if Appellants prevail on the merits of that issue, then § V(9) does not apply to this project at all and the remand is unnecessary. Accordingly, we will hold a telephone conference on Tuesday, October 16, 2001 at 4:15 p.m. to discuss the hearing now scheduled for October 30 and 31, 2001. It appears to the court that this limited aspect of the hearing can easily be concluded on October 30, 2001, unless a necessary witness is only available on October 31; please be prepared to address holding the hearing on a single day or half day, and whether any pre-filed testimony or trial memoranda should be presented on this issue.

Done at Barre, Vermont, this 10th day of October, 2001.

_____
Merideth Wright
Environmental Judge


**Footnotes**

1.    This barn may have been in use as a garage; the use of the existing or the new barn structure as a residential garage accessory to the house is not at issue.

2.    This term is used for the purposes of discussion, as one contested issue in this case is whether this watercourse qualifies as a "stream" for the purposes of §V(9) of the Zoning Ordinance. Other terms referring to a watercourse constructed to power a mill are a 'flume' or 'millrace.'

3.    Setback From Rivers or Streams. To protect water quality and maintain the scenic beauty of the Town's rivers and streams, structures including septic systems shall be setback a minimum of 50 feet from the top of the bank or 75 feet from the edge of the stream where there is no identifiable bank. This requirement may be varied by the Board of Adjustment as follows:
A. If the applicant can demonstrate that setback of the structure less than the above standard will be accomplished in a manner which will not adversely affect water quality or scenic beauty.
B. If, in the judgment of the Planning Commission, a setback greater than the above standard will be required to accomplish the purpose of this Section.

4.    Neither party has submitted the as-built plans.

5.    Neither party has submitted this application or the Zoning Administrator's ruling on it.

6.    Neither party has submitted this application for a stream setback variance.

7.    Neither party has submitted a copy of this letter.

8.    Neither party has submitted the applications for a §IV(4) variance and for conditional use approval.

9.    "The variance contemplates a departure from the terms of the ordinance in order to preclude confiscation of property, while the exception contemplates a permitted use when under the terms of the ordinance the prescribed conditions [for it] are met. The decisive difference between these forms of relief is that a variance is authority extended to a property owner to use his property in a manner forbidden by the zoning enactment, while an exception allows him to

put his property to a use which the enactment expressly permits." (Citations, footnotes, and internal quotations omitted.)

10.     Material facts remain in dispute as to whether the Town should be estopped from enforcement based upon representations of the Zoning Administrator in the period between issuance of the 1998 permit and the construction of the changed project.

11.     Unless the 1998 approved structure was a non-complying structure or a non-conforming use in any other respect, which has not been suggested by either party.